UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNARD BROWN, SR.,

                    Petitioner,

v.                                          Case No. 3:05-cv-86-32TEM

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.

_____

## **ORDER**[2]

### **I. Status**

Petitioner Bernard Brown, Sr., an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 2254 on January 24, 2005.[3] Petitioner challenges the revocation of his conditional release supervision and argues that "[t]he [circuit] court created a manifest injustice by ignoring and failing to review competent

_____

[1] Walter A. McNeil is substituted for James R. McDonough as a proper party Respondent pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

[2] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it has been entered only to decide the matter addressed herein and is not intended for official publication or to serve as precedent.

[3] See Thomas v. Crosby, 371 F.3d 782 (11th Cir. 2004) (holding that a petitioner's petition, which challenged a decision of the Florida Parole Commission, not the state court conviction, was governed by both 28 U.S.C. § 2241 and 28 U.S.C. § 2554), cert. denied, 543 U.S. 1063 (2005).

substantial evidence via sworn testimony that Brown's violations of conditional release supervision were not willful or arbitrary." Petition at 6.   Petitioner requests that this Court review the record of the revocation hearing.   *Id.*   He concludes that "the testimony given at the hearing completely exonerates him and even in light of his admiss[i]on of guilt will prove his admitted violations were <u>not</u> willful or arbitrary . . . ."   *Id.*

The Florida Parole Commission filed a Response to Petition (Doc. #8) (hereinafter Response) with exhibits in support of the Response.[4]   Petitioner was instructed on how to properly respond. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #6). Petitioner has replied.   <u>See</u> Petitioner's Reply to Respondents' Response to Petition (Doc. #12); Notice of Pertinent Authority for Consideration in Habeas Corpus Proceeding (Doc. #18).   On March 30, 2007, this Court ordered the Respondents to supplement the record with a complete transcript of the May 2, 2003, hearing.   <u>See</u> Court's Order (Doc. #13).   Respondents, on June 5, 2007, filed the transcript of the May 2, 2003, conditional release violation hearing.   <u>See</u> Respondents' Notice of Filing Transcript (Doc. #16), attached Transcript of the May 2, 2003, conditional release hearing (hereinafter Tr.).   This case is now ripe for review.

---

[4] Respondents' exhibits will be hereinafter referred to as "Ex."

2

## II. Procedural History

On April 17, 1989, Petitioner Brown was sentenced to two concurrent thirty-year terms of incarceration for two counts of attempted sexual battery on a child under twelve years of age in Columbia County Case No. 89-181.  Ex. A.  Petitioner was also sentenced, upon violation of probation, to concurrent ten-year terms of incarceration for unarmed robbery in Columbia County Case No. 85-44 and armed robbery in Columbia County Case No. 87-531. Ex. B; Ex. C.  Petitioner was further sentenced to fifteen-year terms of incarceration for robbery in Columbia County Case Nos. 89-80 and 89-123, to run consecutively to each other, but to run concurrently with his other sentences.  Ex. D; Ex. E.

On February 7, 2002, having reached his release date, Petitioner Brown was released to conditional release supervision in accordance with Fla. Stat. § 947.1405, subject to terms and conditions, until January 26, 2019 (the maximum supervision date). Ex. F.  On March 6, 2003, the Florida Parole Commission issued a Warrant for Retaking Conditional Releasee, stating:

> TO ANY OFFICER authorized to serve criminal process and all peace officers of this State:
>
> Having reasonable cause to believe that <u>Bernard Brown</u>, a prisoner of the State of Florida, was released from the Department of Corrections, for the offense of <u>Robbery No Firearm or Deadly Weapon, and Attempted Sexual Battery By An Adult</u>, and now in the legal custody of the Florida Parole Commission, has violated the terms and conditions of his/her

3

Conditional Release or has lapsed into criminal ways by:

Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Conditional Release in that on or about February 8, 2003, in Columbia County, Florida, he did unlawfully possess, and or constructively possess drug paraphernalia, to-wit: a Cocoa [sic] Cola can with a pinhole on one side containing cocaine residue.

Violated Condition 7 by failing to obey all laws, ordinances or statutory conditions of Conditional Release in that he did willfully fail to comply with Florida Statutes 948.09 (Formerly 945.30) and as of February 11, 2003, he did fail to make $50.00 per month cost of supervision payments, and is $312.41 in arrears.

Violated Special Condition 15 which states, "You shall have a mandatory curfew where you shall be confined to your residence during the hours from 7:00 p.m. to 6:00 a.m., except for work/treatment purposes as authorized by your Conditional Release Supervisor," and this he failed to do by remaining away from his residence on February 28[5], 2003, at approximately 4:18 a.m.

Now, therefore, pursuant to the provisions of Chapter 947, Florida Statutes, I hereby order that said prisoner be retaken and detained for a violation hearing as provided in said Chapter, and I hereby authorize and require you to so retake him/her and for so doing, this shall be your sufficient warrant.

Ex. G.

On April 1, 2003, Petitioner was arrested on the March 6, 2003 warrant and was taken to the Columbia County Jail. On April 7,

---

[5] As noted by the hearing officer, the correct date is February 8, 2003. Ex. H at 3, 5; Tr. at 2-3.

2003, Joseph Reese, a Florida Parole Commission hearing officer, conducted an initial interview with Petitioner at the jail and gave him notice of his upcoming conditional release violation hearing. At the May 2, 2003, violation hearing, the hearing officer informed Petitioner of his rights.[6]

> Mr. Reese: When I interviewed you on April 7, 2003, you indicated that you did not have an attorney to represent you during the hearing?
>
> Inmate Brown: Yes.
>
> Mr. Reese: Do you still want to proceed without an attorney?
>
> Inmate Brown: Yes.[7]
>
> Mr. Reese: Okay, I will go over your rights one more time. You are entitled to appear and speak on your own behalf, and present documents at the Conditional Release Violation hearing. You have a right to present evidence on your own behalf, which includes the right to obtain witnesses to appear on your behalf, and request the Commission [to] issue subpoenas to those witnesses. You are entitled to have evidence that will be disclosed to you prior to the hearing. You have the right to examine evidence used

---

[6] If the releasee elects to proceed with a hearing, he must be informed orally and in writing of the following: the alleged violation with which he is charged; his right to be represented by counsel; his right to be heard in person; his right to secure, present and compel the attendance of witnesses relevant to the proceeding; his right to produce documents on his own behalf; his right of access to all evidence used against him and to confront and cross examine adverse witnesses; and, his right to waive the hearing. See Fla. Stat. § 947.141(3)(a)-(g).

[7] Petitioner signed a Waiver of Attorney, and the Waiver of Attorney was introduced into evidence by the hearing officer. Ex. H, Conditional Release Violation Hearing Worksheet at 1.

against you, and to confront and cross examine adverse witnesses that testified against you at your violation hearing.  You have the right to be represented by council [sic] and under certain circumstances[,] council [sic] may be appointed for you if you are indigent. Appointed council [sic] will be considered under the standards set forth by the United States Supreme Court decision of Gagnon/Scar[p]elli[8]   (inaudible)  Rule 2322.014 Florida Administrative Code.   You have a right to receive 14 days advance written notice of the hearing or you may waive any and all of the above stated rights, or you may waive your right to a violation hearing. Do you have any questions about your rights before we proceed with the hearing?

Inmate Brown: No sir.

Mr. Reese:   The hearing is held pursuant to Florida Statute 947.141, this is a final revocation hearing, but as I have explained to you[,] the final decision is made by the Commissioners in Tallahassee. It is really my responsibility to conduct the hearing and make a recommendation, but they make the final decision.[9] Mr. Hogan [probation officer] can make a recommendation for the record also if he wants to.   This is an administrative hearing; it is not really a criminal trial, so the rules of evidence applied in a criminal proceeding will not necessarily apply during this hearing.  At this time, Mr. Hogan is in attendance, myself Joseph Reese, Parole Examiner, the releasee Bernard Brown, and Parole and Probation Officer who is in training, and her name is Adrian Dulapree.

---

[8] <u>Gagnon v. Scarpelli</u>, 411 U.S. 778 (1973).

[9] At the conclusion of the hearing, the hearing officer again notified Petitioner that he would not make the final decision, but rather would make a recommendation to the Commissioners in Tallahassee.   Tr. at 11; <u>see</u> <u>Lopez v. Florida Parole Comm'n</u>, 943 So.2d 199 (Fla. 1st DCA 2006) (stating that a hearing examiner's recommendation is non-binding).

> What I am going to do Mr. Brown is read each
> one of these violations to you again and then
> you can enter you[r] plea for the record.

Tr. at 1-2.  Petitioner acknowledged that he understood the above-described rights.  Id.

The hearing transcript reflects that Petitioner pled not guilty to the first violation (failure to obey all laws by unlawful possession of drug paraphernalia).  However, the transcript contains a number of "inaudibles," instances where the court reporter was apparently not able to discern what was being said on the audiotape of the hearing.[10]  Unfortunately, two of these "inaudible" moments occur when Petitioner was asked to offer his plea to the second violation (failure to pay the costs of supervision) and to the third violation (failure to comply with the mandatory curfew).  Id. at 2-3, 6.  The transcript reflects that after Petitioner offered his [inaudible] response as to his plea regarding the second violation, Petitioner and the hearing officer engaged in a discussion as to whether Petitioner's violation of that charge was merely technical, whether it perhaps involved mitigating factors, and whether he could "plead no contest."  Id. at 2.  Moving on to the plea as to the third violation (regarding

---

[10]This tape, which Petitioner has repeatedly asked to be produced (see, e.g., Petitioner's October 30, 2003 pro se state Petition for Writ of Habeas Corpus, Ex. H), was only transcribed after this Court ordered the Respondents to do so in March, 2007 and was therefore not available during any prior consideration of Petitioner's claims.

the curfew), the transcript reveals that after Petitioner's [inaudible] response, the hearing officer discussed whether the two arresting officers who were scheduled to testify had been located, and took a brief recess. _Id._ at 3. Once back on the record, the hearing officer stated that Petitioner had pled no contest to both the second and third violations. _Id._ He then engaged in further discussion with Petitioner regarding whether Petitioner was intending to change his plea from no contest to guilty as to the second violation. Unfortunately, Petitioner's response as to whether this was his intent is again "inaudible." _Id._ The hearing officer then read Petitioner the charges forming the third violation and asked Petitioner whether he wanted to change his plea. _Id._ at 3-4. Here too, Petitioner's response is "inaudible." _Id._ at 4.

After Petitioner entered his pleas, which the hearing officer's Summary[11] reported were pleas of "not guilty" as to the first violation, and "guilty" as to the second and third violations (_see_ Ex. H at 2, 4), various witnesses presented testimony. With regard to the first violation (stemming from the charge for unlawful possession of drug paraphernalia), the hearing officer found Petitioner not guilty based on testimony of the arresting officers and Petitioner and evidence submitted at the hearing,

---

[11]See Ex. H, Conditional Release Violation Hearing Worksheet, Summary of Violation Hearing ("Summary").

which revealed that the charge against Petitioner of Possession of Paraphernalia was dismissed by the State Attorney's Office in Lake City based on insufficient evidence to factually charge or prove one or more of the required elements of the crime.[12]

As to the second violation (for failure to pay the costs of supervision), the hearing officer received testimony from both Petitioner and Jeff Hogan, a correctional probation specialist with Parole and Probation Services assigned to monitor Petitioner during his term of supervision. According to the hearing transcript, Mr. Hogan testified that while Petitioner was $312.41 in arrears as to his supervision costs, which was a "substantial violation," it was "not necessarily a willful violation" as it appeared Petitioner had been making partial payments but did not have the means to pay the costs in full, given his living expenses, as well as the costs of his other court-ordered treatment. Tr. at 4. Although there are "inaudible" gaps in the transcript here too, both Petitioner and Mr. Hogan testified as to Petitioner's income from various part-time and full time positions he held (which monthly income ranged from $0 during his first months out on release to $1044 per month

---

[12]During the hearing, probation specialist Jeff Hogan testified that the State Attorney's Office explained to him that a passenger in Petitioner's vehicle later admitted that the drug paraphernalia belonged to him, not Petitioner. Tr. at 8. Mr. Hogan testified that Petitioner's most recent drug testing did not test positive for cocaine. Id. Mr. Hogan's initial written report of violation states that Petitioner's drug testing did not reveal any substance abuse during his period of supervision. Ex. G at 2.

once Petitioner was employed full time); his expenses (which included court-ordered sex offender treatment programs requiring various start-up fees ranging from $35 to $225 as well as $25 to $30 weekly program fees; $335 per month for rent; a $246 monthly car payment with insurance; $200 per month for water, electricity and gas; $21 to $50 per month for cholesterol and arthritis medications; and a $6000 debt to the VA hospital). Id. at 4-6, 11-13. The hearing officer noted that these expenses did not include food or gas for Petitioner's car. Id. at 13.

Mr. Hogan testified that these were "mitigating circumstances" which caused the violation but that he anticipated that because Petitioner was already making partial payments toward his supervision, he would be able to catch up on his arrearage in the future once some of his other expenses were paid down. Id. at 12. Mr. Hogan further testified that in circumstances such as these, where a defendant is attempting to make payments in the face of financial difficulties, where the arrearage is not too great, and where the term of supervision is lengthy enough that a defendant can likely catch up on payments in the future,[13] a defendant's failure to remain current with his supervision costs would not alone normally result in a violation report. Id. at 11. However, when a separate alleged violation (such as the drug paraphernalia

---

[13]Petitioner was scheduled to remain under conditional release supervision until January 26, 2019. Ex. F.

10

charge here) results in the creation of an initial violation report, the Parole and Probation Officer is required to include in that report all monetary delinquencies.  Id.

The hearing officer's Summary of testimony included the following recitations relevant to the second violation:

> Brown [Petitioner] entered a guilty plea to violation[ ]2. . . . Brown claims he was having difficulty making his COS [Cost of Supervision] payments.  His VA pension was $103.00 monthly but he had to pay back an overpayment of $6029.00.  From April 2002 through February 2003 subject earned approximately $8,000.00 and his monthly expenses were approximately $700.00.

Ex. H at 4.

> Mr. Hogan testified that subject was in arrears in his Cost of Supervision payments by the amount of $312.41, as of February [illegible], 2003.  Subject pled guilty to the second violation but according to Mr. Hogan subject was having difficulty meeting his financial obligations each month.  Subject also testified he was just getting by.

Ex. H at 5.

In his Summary, the hearing officer found Petitioner to be guilty of this violation "[b]ased on his own admission of guilt." Ex. H. at 5.  The hearing officer further found Petitioner "did willfully fail to comply with Florida Statute 948.09 formerly 945.30 and as of February 11, 2003, he did fail to make $30.00 per month cost of supervision payments and is $312.41 in arrears."  Id.

As to the third violation for failure to abide by the curfew requirement that Petitioner remain confined at his residence

11

between 7:00 p.m. and 6:00 a.m. except for work or treatment purposes, the hearing officer received testimony from Petitioner as well as Mr. Hogan, both of whom testified that Mr. Hogan did permit Petitioner to leave his home earlier than 6:00 a.m. so that he could travel to work, stopping for breakfast on the way.  Mr. Hogan testified that he and Petitioner had "numerous" conversations about that matter, but that the necessary travel did not entail Petitioner leaving his residence as early as 4:18 a.m., the time recorded on the February 8, 2003 arrest report, and apparently verified by the arresting officers who testified at the hearing.[14] Id. at 8-9, 13. Mr. Hogan testified that he permitted Petitioner to leave 30-45 minutes before the 6:00 a.m. curfew and that Petitioner's decision to leave home even earlier on February 8, 2003 was "probably an error in judgment."  Id. at 13.  Although parts of this testimony are inaudible, in his Summary of the testimony, the hearing officer noted that Petitioner reported that he left his home on the date in question, drove to the Squeeze In[n] Restaurant in Lake City for breakfast, met a man who asked for a ride, and then drove with his new passenger to Schaff's Market with an intent to proceed on from there to his job.  Ex. H at 4.   According to the officers, the arrest occurred at

---

[14]The transcript here reflects some "inaudible" portions, Tr. 9, but it appears the hearing officer credited the evidence as supporting a finding that Petitioner was arrested at 4:18 a.m.  Ex. H at 5.

approximately 4:18 a.m. at [Schaff's] [also referred to as "Scamps" in the transcript (Tr. at 7) and "Scaff's in Mr. Hogan's violation report, (Ex. G at 2) ] Market where police responded to a call regarding a drug sale in progress involving three black males in a black 4 door car.  Tr. at 7.[15]  In his Summary, the hearing officer found Petitioner to be guilty of this violation "[b]ased on his own admission of guilt," where Petitioner failed to abide by his mandatory curfew condition when he was "away from his residence on February 8, 2003 at approximately 4:18 a.m."  Ex. H at 5.

During the mitigation phase of the hearing, Petitioner's mother and brother, as character witnesses, stated that they were

---

[15]The transcript indicates that officers were reviewing a copy of a "narrative of the circumstances" when they testified regarding the time and date of the arrest.  Tr. at 7.  Here too, the transcript contains "inaudible" gaps in the testimony.  Id. Petitioner states that the hearing officer asked the officers to clarify whether the arrest actually occurred as early as 4:18 a.m. because the report reflected that Petitioner was booked in at the county jail, which was only 3 miles away, more than an hour later. Petitioner states that the officers were unable to verify or corroborate that the arrest report accurately reflected the time of the arrest.  See Doc. 12 at 4.  While the hearing officer's summary of testimony does not reflect this colloquy, the officer's report focused on the inquiry with the officers as it related to the first violation (for the drug paraphernalia charge), and not on testimony which may have impacted the facts surrounding the other two violations, as the hearing officer found Petitioner had admitted his guilt as to both of those violations.  Additionally, Petitioner further stated that during the hearing, Mr. Hogan noted that Petitioner was to report to work at 6:15 a.m., not 6:50 a.m., as Mr. Hogan had stated in his initial violation report.  Doc. 12 at 4.  That testimony is not reported in the transcript either (nor referenced in the hearing officer's summary of testimony), but given the number of places where parties' responses are "inaudible," the Court cannot rule out that such testimony was offered.

willing to assist Petitioner Brown in any way possible if he were reinstated. Tr. at 9; Ex. H at 5.  Mr. Hogan recommended that Petitioner be restored to supervision, noting that he was particularly impressed with the excellent progress reports Petitioner's sex offender counselor had consistently given him and the positive role model she reported that Petitioner had become for the others in his group.  Tr. at 13.

Upon this record, the hearing officer made the following disposition recommendation:

. . .

> Based on Mr. Hogan's willingness to assume supervision of this case again and positive comments regarding subject's participation in the sex offender outpatient therapy program, **this examiner is recommending that subject be restored to supervision**. This examiner has no objections to giving this individual another opportunity to live in the community under Conditional Release supervision.  Subject has good family support and it is noted also that subject has no prior revocations of community supervision.

Ex. H at 6 (emphasis added).  The hearing officer's "Summary of Violation Hearing" was reviewed by the Regional Administrator on May 29, 2003.  Id.  However, as noted above, the transcript of the violation hearing itself was not prepared until ordered by this Court; thus, there was no review of the actual transcript of the hearing.

On July 9, 2003, the Florida Parole Commission revoked Petitioner's conditional release supervision, effective April 1,

2003, for failing to pay the costs of supervision and for failing to comply with the mandatory curfew. Ex. I, Revocation of Conditional Release Order.[16]  In the order, the Florida Parole Commission stated:  "On May 2, 2003, the subject admitted the charge of violating his Conditional Release and was given an opportunity to present evidence in mitigation on his behalf." Id. The Parole Commission concluded:  "for the best interests of society and the Conditional Releasee, that Bernard Brown be returned to the custody of the Department of Corrections, there to remain not to exceed his sentence or until further order of the Commission." Id.  No transcript was made of the Commission's meeting. Response at 2, paragraph 4.

On or about October 30, 2003, Petitioner filed a *pro se* state petition for writ of habeas corpus, challenging the Florida Parole Commission's rejection of the hearing officer's recommendation that he be restored to supervision. Ex. J. The habeas corpus petition

---

[16] The Commission's order, dated July 9, 2003, states that the Florida Parole Commission, "after hearing and consideration in accordance with the provisions of Chapter 947, Florida Statutes, finds that the said Bernard Brown has violated the terms and conditions of his/her Conditional Release . . . ." Ex. I. Section 947.141(4) states that a "panel of no fewer than two commissioners shall enter an order determining whether the charge of violation of conditional release . . . has been sustained based upon the findings of fact presented by the hearing commissioner or authorized representative." Fla. Stat. § 947.141(4).  In the order, the panel may revoke conditional release, reinstate the original order granting the release or enter another order "as it considers proper." Id.  The face of the Commission's Order does not state which two Commissioners entered the Order.

did not challenge the findings of guilt.  *Id.*  Petitioner noted
that the May 2, 2003, revocation hearing was recorded and requested
that the state court subpoena the tapes and review them before
making a decision.  *Id.* at 2 n.1.  Specifically, Petitioner claimed
that the Florida Parole Commission, in revoking his conditional
release, reweighed the evidence presented at the May 2, 2003,
revocation hearing.  *Id.* at 3-4.

The Florida Parole Commission responded, in pertinent part, as
follows:

> The record . . . supports that the Commission
> did not reweigh the evidence and come to a
> different finding than the examiner.  The
> Commission merely chose to revoke conditional
> release supervision based on the examiner's
> findings of guilt on the cost of supervision
> and curfew violations.
>
> . . . .
>
> The instant case is distinguishable from
> *Tedder* [842 So.2d 1022 (Fla. 1st DCA 2003)],
> because the Commission did not reweigh
> evidence and draw a different conclusion.  The
> Commission found, just as the parole examiner
> found, that Petitioner was guilty of violating
> conditions regarding cost of supervision
> payments and curfew requirements.  The
> Commission rejected the parole examiner's
> recommendation that, notwithstanding
> Petitioner's guilt, he should be restored to
> supervision.
>
> Under Florida Statute § 947.141(4), a
> panel of no fewer than two commissioners make
> the determination on whether to revoke
> conditional release supervision when an
> individual is found guilty of violating a term
> or condition of supervised release.  While the

16

> parole examiner may make a recommendation, it
> is not binding on the Commission. . . . Here,
> the parole commission accepted the findings of
> fact of the hearing examiner and elected to
> revoke Petitioner's supervision. Petitioner
> has not demonstrated that the Commission
> abused its discretion in accepting the hearing
> officer's finding of guilt and revoking
> supervision based on those findings.

Ex. K at 3-5.

Petitioner filed a *pro se* Response, stating that the facts
presented at the hearing, as demonstrated by the hearing tapes that
he requested the court to subpoena and review, reveal that although
he "admitted to violating conditions of cost of supervision and the
curfew violation," such violations were caused by "overwhelming [
] mitigating circumstances beyond his control" and that it was
these circumstances which provided a basis for the hearing
examiner's recommendation of restoration to supervision. Ex. L.

On January 23, 2004, the circuit court denied the state
petition on the merits, stating in pertinent part:

> This Cause is before the Court on a
> Petition for Writ of Habeas Corpus challenging
> the revocation of conditional release
> supervision. This Court having reviewed the
> Petition, the Response filed by the Florida
> Parole Commission and all other pleadings
> filed in this case,
>
> FINDS AND DECIDES that Petitioner was
> sentenced to an overall thirty year term on
> April 17, 1989. On February 7, 2002,
> Petitioner was released to conditional release
> supervision subject to terms and conditions
> until January 26, 2019. At a conditional
> release violation hearing on May 2, 2003,
> Petitioner admitted to violating conditions

regarding cost of supervision payments and abiding by a mandatory curfew. The parole examiner found Petitioner guilty of these two charges and recommended reinstatement to supervision. On July 9, 2003, the Florida Parole Commission entered an Order revoking Petitioner's conditional release supervision for violating his curfew and cost of supervision requirement.

Petitioner has filed a Petition for Writ of Habeas Corpus challenging the Parole Commission's actions in rejecting the parole examiner's recommendation that he be restored to supervision based on the holding of <u>Tedder v. Florida Parole Comm'n</u>, 842 So.2d 1022 (Fla. 1st DCA 2003). The Court in <u>Tedder</u>, however, merely stated that the Parole Commission could not reject a hearing examiner's factual findings as long as they were supported by competent, substantial evidence. In the case at bar, the Parole Commission accepted the factual findings and determination of guilt by the hearing examiner. Pursuant to Florida Statute §947.141(4), the decision on whether to revoke supervision of a conditional release violator is within the discretion of the Parole Commission. While the hearing examiner may make a recommendation, it is not binding on the Commission. Petitioner has not demonstrated the Florida Parole Commission abused its discretion in revoking his condition[al] release supervision based on his admitted violations.

Ex. M, Order Denying Petition for Writ of Habeas Corpus at 1-2.

On or about February 18, 2004, Petitioner filed a *pro se* Emergency Petition for Writ of Certiorari in the state appellate court, challenging the lower court's denial of his petition. Ex. N. In his certiorari petition, Petitioner claimed that the lower court's denial of the request for audio tapes of his hearing was a violation of due process since the tapes would demonstrate that his

18

violations were not willful.  Id.  Petitioner also argued that there was not competent and substantial evidence to support a finding of a willful violation.  Id.  Petitioner claimed that the audiotape of the hearing would reveal that while he was technically guilty of these violations, Petitioner's violations were not willful because Mr. Hogan gave him permission to break his curfew for work and that Mr. Hogan further gave him permission to delay payment of his cost of supervision due to Petitioner's significant financial difficulties, a situation which Mr. Hogan was closely monitoring.  The Commission responded that Petitioner's admission of guilt as to the curfew and cost of supervision charges constituted competent and substantial evidence to support the hearing examiner's finding of guilt and the Commission was not bound by the hearing examiner's recommendation. Ex. O.  Petitioner filed a Response in which he reiterated his position that, while guilty of these two violations, the violations were not willful and, in fact, he was following the directions of his conditional release supervisor (Hogan) whose instructions he was required to follow pursuant to his terms and conditions of supervision.  Ex. P.  On October 21, 2004, the appellate court per curiam denied the petition for writ of certiorari on the merits.  Brown v. Florida Parole Comm'n, 886 So.2d 229 (Fla. 1st DCA 2004); Ex. Q.

Petitioner Brown's Petition (signed on January 20, 2005, and filed in this Court on January 24, 2005) is timely filed within the

one-year period of limitations.  _See_ 28 U.S.C. § 2244(d); Response at 4.

### III. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA).  Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.

> The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this [action] and limits our review of the decisions of the state courts:
>
> > A federal court may not grant a petition for a writ of habeas corpus to a state prisoner on any claim that has been adjudicated on the merits in state court unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in state court.
>
> _Clark v. Crosby_, 335 F.3d 1303, 1307-08 (11th Cir. 2003) (citations omitted). . . .

_Diaz v. Sec'y for the Dep't of Corr._, 402 F.3d 1136, 1141 (11th Cir.), _cert. denied_, 126 S.Ct. 803 (2005).  Furthermore, AEDPA also directs that a presumption of correctness be afforded to factual findings of state courts, which may be rebutted only by clear and convincing evidence.  _See_ 28 U.S.C. § 2254(e)(1).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling.  <u>Parker v. Sec'y for the Dep't of Corr.</u>, 331 F.3d 764, 776 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 540 U.S. 1222 (2004); <u>Wright v. Sec'y for the Dep't of Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S. 906 (2003).  Thus, to the extent that Petitioner's claim was adjudicated on the merits in the state courts, it must be evaluated under § 2254(d).

## IV. Evidentiary Hearing

A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.  <u>Smith v. Singletary</u>, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); <u>Cave v. Singletary</u>, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing <u>Townsend v. Sain</u>, 372 U.S. 293 (1963)).  The poor quality of the transcript of Petitioner's Conditional Release violation hearing certainly affects the Court's ability to fully assess Petitioner's contentions as to some of the testimony received at that hearing. However, the record is sufficiently developed for this Court to perform an AEDPA review of the claims decided by the state court such that further factual development is unnecessary at this time.

See Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, an evidentiary hearing will not be conducted by this Court.

## V. Findings of Fact and Conclusions of Law

Petitioner Bernard Brown challenges the revocation of his conditional release, claiming "[t]he [circuit] court created a manifest injustice by ignoring and failing to review competent substantial evidence via sworn testimony that Brown's violations of conditional release supervision were not willful or arbitrary." Petition at 6. To the extent that Petitioner may be attempting to raise claims presented in his state petition for writ of habeas corpus that raised issues of purely state law, those claims are not cognizable on federal habeas review. Beverly v. Jones, 854 F.2d 412, 416 (11th Cir. 1988). The purpose of a federal habeas proceeding is review of the lawfulness of Petitioner's custody to determine whether that custody is in violation of the Constitution or laws or treaties of the United States.[17] Coleman v. Thompson, 501 U.S. 722, reh'g denied, 501 U.S. 1277 (1991). The Eleventh Circuit has stated that only in cases of federal constitutional error will a federal writ of habeas corpus be available. See Jones

---

[17] A federal district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a).

22

v. Goodwin, 982 F.2d 464, 471 (11th Cir. 1993); Krasnow v. Navarro, 909 F.2d 451, 452 (11th Cir. 1990). "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988) (quoting Willeford v. Estelle, 538 F.2d 1194, 1198 (5th Cir. 1976)).

Here, however, Petitioner has raised a claim of federal constitutional dimension and it is properly before this Court. As previously noted, Petitioner challenged the revocation of his conditional release in his state petition for writ of habeas corpus, claiming that the record revealed testimony not included in the hearing examiner's summary which demonstrated that "overwhelming [ ]mitigating circumstances beyond [Petitioner's] control cause[d]" the two violations for which Petitioner's conditional release was revoked. Thus, pro se Petitioner's state habeas petition adequately raised the due process argument that his violations were not supported by the requisite findings of willfulness. See discussion at pp. 25-31, infra. In denying his petition on the merits, the state court stated, in relevant part, that "Petitioner has not demonstrated the Florida Parole Commission abused its discretion in revoking his condition[al] release supervision based on his admitted violations." Ex. M at 2. Petitioner then filed a petition for writ of certiorari, which was

per curiam denied on the merits.  Accordingly, Petitioner's federal constitutional claim was rejected on the merits by the state courts.  Thus, there are qualifying state court decisions.

To the extent that the state courts adjudicated the federal constitutional issue on its merits, the ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.  Upon a thorough review of the record and the applicable law, the Court finds that Petitioner is entitled to relief because the state courts' adjudications of his claim resulted in a decision that is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, and an unreasonable application of clearly established federal law.[18]  Accordingly, based on the record before this Court, the Court finds Petitioner's challenge to the revocation of his conditional release supervision is meritorious and that a new revocation hearing must be held.

In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court held that the requirements of due process apply in parole revocation proceedings.  Though subject to many restrictions not applicable to other citizens, once released on parole, a parolee relies "on at least an implicit promise that parole will be revoked

---

[18] See Putnam v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001) cert. denied, 537 U.S. 870 (2002)(explaining difference under AEDPA between a decision "contrary to" federal law and one resulting in "an unreasonable application of" federal law).

only if he fails to live up to the parole conditions." Morrissey, 408 U.S. at 482.   Therefore, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee." Id.  This liberty falls "within the protection of the Fourteenth Amendment" and is subject to termination only where the process affords certain procedural guarantees. Id.  Unless waived by a parolee, these proceedings must include a final hearing at which relevant facts are determined and a parolee is given an opportunity to be heard and to show either "that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." Id. at 487-88.

Such mitigating circumstances often arise where the alleged violation involves the non-payment of a fine or fee and the Supreme Court, whose jurisprudence reflects a long-standing "sensitiv[ity] to the treatment of indigents in our criminal justice system," has held that in such circumstances, revocation is not appropriate where the failure to pay is not willful. Bearden v. Georgia, 461 U.S. 660, 664, 668-69 (1983).   Therefore, "in revocation proceedings for failure to pay a fine or restitution, [the State] must inquire into the reasons for the failure to pay." Id. at 672. A willful refusal to pay or a failure to make sufficient bona fide efforts to acquire the resources to pay may justify revocation.

25

Id.  However, where the failure is not willful, alternate measures (such as reducing the fee or extending the time for payment of the fee) must be considered before imprisonment is required.   Id. Otherwise, a conditional freedom would be lost based on nothing more than the inability to pay a fine, which deprivation "would be contrary to the fundamental fairness required by the Fourteenth Amendment."  Id.  See also, Stephens v. State, 630 So.2d 1090, 1091 (Fla. 1994) (holding that pursuant to Bearden, 461 U.S. at 672-73, the Fourteenth Amendment requires that a probationer not be returned to prison for failure to pay a fine or restitution absent "a determination that that person has, or has had, the ability to pay but has willfully refused to do so.").

However, in Bearden, the Supreme Court did not suggest that the Constitution would require all other types of violations to be subjected to a similar willfulness determination before resulting in revocation, stating that appropriate considerations include the character of the violation in relation to the underlying crime, as well as the degree of fault involved in the violation.  Bearden, 461 U.S. at 669, n.9.  Thus, for example, where a person has been convicted of drunk driving and proves while on probation that despite efforts, he cannot control his drinking, the revocation of probation might nevertheless be necessary to protect society.  Id.

To comport with these standards, Florida courts have held that the State may only revoke a term of probation upon finding that the

violation is both "substantial" and "willful" "and supported by the greater weight of the evidence," regardless of whether the violation is one based on a failure to pay or of another kind.  <u>See</u> <u>State v. Carter</u>, 835 So.2d 259, 261 (Fla. 2002) (remanding for determination of whether admitted failure to file monthly report was both willful and substantial violation); <u>Russell v. State</u>, __ So. 2d __, No. SC06-335, 2008 WL 1901666, at *4 (Fla. May 1, 2008) (citing <u>Carter</u> for proposition that revocation of probation must be supported by finding of willful and substantial violation); <u>Lawson v. State</u>, 969 So.2d 222, 229-30 (Fla. 2007) (citing <u>Morrissey</u>, 408 U.S. 471, and various Florida decisions for proposition that state's probation revocation process must accord due process; and where decision to revoke is required by statute to be based on a "material violation," due process requires that decision to revoke be supported by a finding of a willful and substantial violation). <u>See also</u> <u>Vitek v. Jones</u>, 445 U.S. 480, 489 (1980) (holding that prisoner's due process rights can arise from due process clause itself or state law; once state grants prisoner a liberty interest, due process protections attach and decisions to revoke may not be "arbitrarily abrogated").

Thus, in the articulation of this single "substantial and willful" standard for evaluating all types of probation violations, Florida courts ensure compliance with the due process requirement announced in <u>Bearden</u> that probation revocations for failure to pay

be undergirded by a finding of willfulness and that all other revocation decisions at least account for the degree of fault in consideration of both the violation and its relationship to the underlying crime.  Florida law having articulated such a standard as applying to all revocation decisions, due process rights attach to that standard itself.  <u>Vitek</u>, 445 U.S. at 488-91 (distinguishing between discretionary prisoner transfer decisions (to which no due process rights attach) and those made upon particular findings "fixed in state law and official practice" which implicate due process rights).

Admittedly, Petitioner is neither a parolee (such as in <u>Morrissey</u>), nor a probationer (such as in <u>Bearden</u>).  Nonetheless, there can be no question that the limited liberties Petitioner enjoyed while on conditional release supervision must be afforded the same protection under the Fourteenth Amendment as is  accorded to probationers or parolees facing re-incarceration before he can be deprived of them.  <u>See</u> <u>Gillard v. State</u>, 827 So.2d 316, 317 (Fla. 1st DCA 2002) (holding that due process considerations articulated in <u>Morrissey</u> apply in context of conditional release supervision violation hearing); <u>Young v. Harper</u>, 520 U.S. 143, 147 (1997) (describing the nature of the liberty interest of a parolee as the freedom to "be gainfully employed," "to be with family and friends and to form the other enduring attachments of normal life"); <u>Gagnon v. Scarpelli</u>, 411 U.S. 778, 782 (1973) (holding that

28

resulting loss of liberty affords probationer with same due process protections as parolee at revocation proceeding).  The State (which otherwise responded on the merits) has not argued otherwise, except to state that "[t]here is no federal right to . . . conditional release supervision." Doc. 8 at 6.  True enough, but once granted, those subject to conditional release supervision enjoy the same freedom as those on parole or probation, which "'although indeterminate, includes many of the core values of unqualified liberty' and thus inherently 'falls within the protection of the Fourteenth Amendment.'" Ellard v. Alabama Bd. of Pardons and Paroles, 824 F.2d 937, 942 (11th Cir. 1987), cert. denied, 485 U.S. 981 (1988) (quoting Morrissey, 408 U.S. at 482).  See also, Evans v. Singletary, 737 So.2d 505, 507 (Fla. 1999) (explaining that Florida's Conditional Release program is a "probation-type program"); Lincoln v. Florida Parole Comm'n, 643 So.2d 668, 670 (Fla. 1st DCA 1994) (noting that pursuant to Florida statute section 947.1405, the Florida Parole Commission, charged with administering Florida's conditional release program, determines when an inmate will be conditionally released, what the terms and conditions of release shall be, whether those terms and conditions have been violated, and whether any such violations warrant revocation).

Moreover, Florida Statute section 947.141 provides that conditional release supervision may be revoked where the offender

violates the "terms and conditions of the release _in a material respect_." (emphasis added).  See also, Fla. Stat. § 948.06(1)(a) (requiring revocation of probation be supported by violation of condition "in a material respect").  And indeed, Florida courts have imputed the same due process protections governing probation and parole revocation decisions to challenges to conditional release supervision revocations.  See, e.g., Houck v. Florida Parole Comm'n, 953 So.2d 692, 692 (Fla. 1st DCA 2007) (holding circuit court failed to observe essential requirements of law where it upheld revocation based on petitioner's violation of conditional release supervision curfew requirement without any evidence that violation was both willful and substantial); Ellis v. Florida Parole Comm'n, 911 So.2d 831, 832 (Fla. 1st DCA 2005) (holding circuit court failed to observe essential requirements of law where it upheld revocation based on petitioner's violation of conditional release supervision requirement that he not leave county, where hearing officer determined petitioner was guilty, but that his violation was not willful).  See also Lawson, 969 So.2d at 230 (holding that Florida Supreme Court's requirement that a violation underlying probation revocation must always be found to be both willful and substantial satisfies probation statute's requirement that revocation be supported by finding that probationer has violated a condition of probation "in a material respect"); Collins v. Hendrickson, 371 F.Supp.2d 1326, 1328 (M.D. Fla. 2005) (granting

habeas petition where revocation of petitioner's control release supervision violated due process when Florida Parole Commission failed to follow statute's mandate for revocation). Thus, while there is no federal right to conditional release supervision, "having exercised the discretion to [place a prisoner into that program]," the State is "constrained by substantive limitations on its authority to rescind [it]." <u>Collins</u>, 371 F.Supp.2d at 1348 (paraphrasing <u>Ellard</u>, 824 F.2d at 942).

It is in the context of these decisions that the Court now examines the two violations for which Petitioner's conditional release supervision was revoked.

As to violation two (failure to pay costs of supervision), the hearing officer found that, "[b]ased on [Petitioner's] own admission of guilt, subject was found guilty of violating Condition 7 . . . in that he did willfully fail to comply with Florida Statute 948.09 . . . and as of February 11, 2003, he did fail to make $30.00 per month cost of supervision payments and is $312.41 in arrears." Ex. H at 5. However, neither the hearing officer's summary of testimony nor the transcript of the hearing contain any support for the hearing officer's determination that the failure to pay was willful. Although Petitioner may have pled guilty to the violation, thereby admitting that he was $312.41 in arrears on his supervision payments, the testimony and evidence of record reveal that Petitioner did not have the ability to remain current with his

supervision payments given his other financial obligations at the time. Mr. Hogan, Petitioner's conditional release supervisor, being fully aware of the situation, was attempting to help Petitioner balance his competing financial obligations and testified that Petitioner's failure to pay was "not necessarily a willful violation" because "there are mitigating circumstances." Tr. 11-12. After hearing testimony from Mr. Hogan and Petitioner about Petitioner's finances, the hearing officer himself stated on the record, "You didn't have any money to spare, that's for sure." Tr. 12. As further described above, the hearing officer went into great detail regarding Petitioner's income and expenses during the hearing and his summary outlines some of this evidence, concluding with remarks that Mr. Hogan stated that although Petitioner had pled guilty to this violation, he was having difficulty meeting his monthly obligations. As the hearing officer reported, "Subject also testified that he was just getting by." Ex. H at 5.

Upon review of this entire record, the Court finds both that the state's application of clearly established federal due process law to the facts of Petitioner's case with regard to his violation for failure to pay costs of supervision was unreasonable, and that the factual premise underlying the Parole Commission's finding that Petitioner's violation for failure to pay costs of supervision was willful or substantial is incorrect by clear and convincing

evidence.[19] 28 U.S.C. 2254(d).  <u>See also</u>, <u>Miller-El v. Cockrell</u>, 537
U.S. 322 (2003) (explaining that even under § 2254's deferential
standard of review, "[a] federal court can disagree with a state
court's credibility determination and, when guided by AEDPA,
conclude the decision was unreasonable or that the factual premise
was incorrect by clear and convincing evidence").  Therefore, the
Florida courts' decision to uphold the revocation of Petitioner's

---

[19]The Court recognizes that the language of the violation
itself as framed contained the word "willful" (<u>see</u> Ex. G-Warrant)
and that in some circumstances a plea of guilty to such a charge
may be sufficient to support a willfulness determination, but not
on this record.
      The Court further notes that although Mr. Hogan testified that
he "consider[ed] [this] to be a "substantial violation for being in
arrears", Tr. at 4, the hearing officer did not make any finding or
include any summary of testimony as to whether this violation was
"substantial."  Ordinarily, the Court might have assumed that such
determination could have been made independently by the Commission
even without its knowledge of Mr. Hogan's testimony (which it did
not have) based on the mandatory nature of this statutory condition
of release.  <u>See</u> Fla. Stat. § 948.09 ("Any person . . . placed on
. . . conditional release supervision . . . <u>must</u>, as a condition of
any placement, pay the department a total sum of money equal to the
total month or portion of a month of supervision times the court-
order amount, but not to exceed the actual per diem cost of
supervision") (emphasis added).  Here, however, the matter is
muddied by the conflicts in the record as to the amount of
Petitioner's monthly supervision costs- - some places in the record
(such as the original violation report (Ex. G) and the Commission's
Revocation Order (Ex. I)), state the amount is $50, while in other
places (such as the hearing officer's findings (Ex. H) and in
various places in the hearing testimony (e.g., Tr. ) the amount is
reported as $30.  This discrepancy is not resolved in the record
and it is not clear whether the difference reflects partial
payments or just errors in the record.  The Court is therefore less
sure whether the Commission could simply rely on the mandatory
nature of the statute to find the violation here to be substantial.
However, because the willfulness determination is not supported,
the Court need not resolve this problem.

conditional release supervision for this violation resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented, and an unreasonable application of clearly established federal law, in violation of 28 U.S.C. § 2254(d).  See Morrissey, 408 U.S. at 487-88, Bearden, 461 U.S. at 668.

As to the third violation (violation of curfew), the hearing officer found that "[b]ased on his own admission of guilt, subject was found guilty of violating Special Condition 15 which states, 'You shall have a mandatory curfew where you shall be confined to your residence during the hours of 7:00 PM to 6:00 AM, except for work or treatment purposes as authorized by your Conditional Release supervisor,' and this he failed to do by remaining away from his residence on February 8, 2003 at approximately 4:18 AM." Ex. H at 5.  Notwithstanding Petitioner's guilty plea,[20] neither the transcript nor the hearing officer's summary contain any support for a finding that this violation was either willful or deemed substantial, and indeed no such finding was ever made, either by the hearing officer or by the Parole Commission.

Given the testimony at the hearing bearing on both the willfulness and substantiality of the violation (which includes

_____

[20]As described above, the inaudible portions of the transcript leave out all of Petitioner's responses regarding his plea.  The hearing officer, however, reported that Petitioner pled guilty (Ex. H at 4, 5) and Petitioner does not dispute that finding in his papers.

statements from Mr. Hogan that he did permit Petitioner to leave earlier than 6:00 a.m. to get to work, that he and Petitioner had had "numerous conversations" about an appropriate time for Petitioner to leave his house, and that in his view Petitioner engaged in an "error in judgment" by leaving so early that day), none of which the hearing officer recounted in his Summary, the state's application of federal due process law to the facts of the third violation was unreasonable.  By failing to make any finding with regard to willfulness or substantiality, the Parole Commission's revocation based on Petitioner's violation for failure to abide by his curfew is erroneous by clear and convincing evidence.  Because Florida law requires that a defendant's conditional release supervision be revoked only on "a material" violation, the failure to make findings as to whether this violation was willful and substantial resulted in a decision that failed to comply with due process.  See Vitek, 445 U.S. at 488; Ellard, 824 F.2d at 942 ("once a state has created the right . . . and has established standards for its revocation, the prisoner's interest has real substance and falls within the protections of the [F]ourteenth [A]mendment") (internal quotations and citations omitted); Smith v. Florida Parole Comm'n, 971 So.2d 1028 (Fla. 1st DCA 2008) (remanding for further proceedings where, notwithstanding petitioner's guilty plea as to curfew violation, Parole Commission failed to make findings as to whether violation was willful or

35

substantial); <u>Van Wagner v. State</u>, 677 So.2d 314, 317 (Fla. 1st DCA 1996) (reversing order revoking probation where record did not support finding that violation for failure to keep officer properly advised of probationer's residence was willful and substantial). Again, the Florida courts' decision to uphold the Parole Commission's decision is erroneous, even in light of the requirements of AEDPA.

This is not, therefore, a decision where the Parole Commissioner improperly reweighed evidence to reject a factual finding of the hearing officer. <u>See, e.g.</u>, <u>Tedder v. Florida Parole Comm'n</u>, 842 So.2d 1022 (Fla. 1st DCA 2003). Indeed, as he advised Petitioner, the hearing officer's recommendation was not binding on the Commission, <u>Lopez v. Florida Parole Commission</u>, 943 So.2d 199 (Fla. 1st DCA 2006), and, with the hearing officer's finding of guilt before them, the Commission members embraced his factual finding but rejected his recommendation, resulting in a decision to revoke Petitioner's conditional release. The Parole Commission's error was in accepting the hearing officer's factual findings as a premise for the Commission's revocation decision because those findings failed to address the issues of willfulness or substantiality as required before revocation of Petitioner's conditional release supervision is permitted. This Court cannot in the first instance rule whether the facts could support findings of willfulness or substantiality as to violations two or three.

Therefore, the appropriate remedy is to give the Parole Commission the option of giving Petitioner another hearing consistent with this opinion or releasing Petitioner on his prior conditions without further delay. See, e.g., Mathis v. Florida Parole Comm'n, 944 So.2d 1182, 1183 (Fla. 1st DCA 2006) (granting state habeas petition and remanding for further proceedings by Parole Commission to determine whether petitioner's violations were willful because record as to willfulness was "not clear").

Additionally, while not a basis for granting the petition, the Court does note that its review of this petition has been hampered by the poor quality of the transcript of the revocation hearing. While the law does not require a verbatim transcript be prepared when a Summary is available, Glumb v. Honsted, 891 F.2d 872, 873-74 (11th Cir. 1990), to the extent there are allegations of material discrepancies between the two, any review by state or federal courts (and by the Commission itself) is made more difficult by the inability to prepare a complete transcript. Further, while revocation proceedings are not required to subscribe to the same degree of process afforded original criminal prosecutions,[21] Morrissey, 408 U.S. at 480, the record here contains deficiencies which could call into question the regularity of the proceedings.

---

[21]Thus, for example, the Court is not particularly concerned that the witnesses at the revocation hearing before the hearing examiner were mistakenly given a translator's oath before offering testimony in English.  Tr. at 7, 9.

For example, in addition to the poor transcript, the Parole Commission's order of revocation, which is signed by a "revocation specialist" does not identify the two Commissioners who made the decision to revoke Petitioner's conditional release supervision. See Ex. I; Fla. Stat. § 947.141(4) (requiring a panel of not fewer than two Commissioners to act on revocation decisions).  Nor is there any record of the July 9, 2003 Commission "meeting" at which the Commission decided to revoke Petitioner's release, nor information as to who, if anyone, was present or offered any statements at that meeting.  See Ex. I; Response at 2, ¶4; Fla. Stat. § 947.06 (prescribing procedures and business for Commission meetings).

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1.  The Petition (Doc. #1) is **GRANTED**, and this action is **REMANDED to the Florida Parole Commission which is ORDERED to either grant Petitioner a new revocation hearing within 45 days of the date of this Order or to release him on the same (or similar, as the law may now require) terms and conditions of his previous conditional release supervision, affording Petitioner credit as appropriate for time served since his supervision was revoked.**

2.  If a new revocation hearing is held, Petitioner should again be offered the right to counsel to represent him at the hearing.

3.    No later than **July 14, 2008**, Respondents shall advise the Court of the status of its compliance with this Order.

4.    The Clerk of the Court shall enter judgment granting the Petition and closing the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  14th  day of May, 2008.

TIMOTHY J. CORRIGAN
United States District Judge

copies to:

Bernard Brown, Sr., *pro se*
Inmate #541693
Hamilton Correctional Institute Annex
11419 S.W. County Rd., #249
Jasper, FL 32052-3735

Kim M. Fluharty, Esq.
General Counsel
Office of General Counsel
Florida Parole Commission
Central Office
2601 Blair Stone Road, Building C
Tallahassee, FL 32399-2450